UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHERRY JACOBSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 1:08-cv-0267-DFH-DML |
| | ) |
| SLM CORPORATION WELFARE BENEFIT | ) |
| PLAN, | ) |
| | ) |
| Defendant. | ) |

ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Sherry Jacobson worked for student lender and loan processor
Sallie Mae for more than twenty years. She stopped working for Sallie Mae on
June 13, 2006, and on August 28, 2006, she applied for long-term disability
benefits from defendant SLM Corporation Welfare Benefit Plan. The Plan's claims
review fiduciary, Reliance, denied Ms. Jacobson's claim initially and on appeal.
The Plan is governed by the Employee Retirement Income Security Act (ERISA),
and Ms. Jacobson filed this action seeking relief under 29 U.S.C. § 1132(a)(1)(B).
Each side has moved for summary judgment. Dkt. Nos. 20, 21. Even under the
deferential "arbitrary and capricious" standard of review, the record shows that
the denial of Ms. Jacobson's claim for benefits was arbitrary and capricious. The
court grants Ms. Jacobson's motion, denies the Plan's motion, and remands this
case for further findings and explanation.

*Summary Judgment Standard*

Summary judgment must be granted if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A factual issue is genuine if there is sufficient evidence for a reasonable finder of fact to find in favor of the non-moving party.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is material if resolving the issue might change the suit's outcome under the governing law.  *Id.*

When deciding a motion for summary judgment, the court considers those facts that are undisputed and gives the non-moving party the benefit of all reasonable inferences from the evidence.  See Fed. R. Civ. P. 56(c); *Anderson,* 477 U.S. at 255; *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999).  Where the court conducts a deferential review of an administrative record, as it often does in ERISA benefits cases, cross-motions for summary judgment are usually the best procedural vehicle.

*Undisputed Facts*

All material facts in this case are undisputed and are taken from the administrative record.  Sherry Jacobson began working for Sallie Mae in 1983. On May 12, 2003, she became a senior administrative assistant for the company. R. 100-01.  She worked eight-hour days until February 2006, when she began to work six-hour days.  She stopped working on June 13, 2006 due to an alleged

disability stemming in large part from fibromyalgia.  R. 101, 104.  Ms. Jacobson was covered by a long-term disability policy that she obtained through Sallie Mae. Reliance Standard Life Insurance Company insured the policy and was the claims review fiduciary for the policy.  R. 1, 15.[1]

I.      *Medical Records*

The administrative record includes many of Ms. Jacobson's medical records from 2006 and 2007.  On March 15, 2006, Dr. Edward Gabovitch examined Ms. Jacobson and determined that she had "fibromyalgia with a generalized pain, sleep disturbance, multiple tender points and basically a normal joint exam."  R. 192.  On June 14, 2006, Ms. Jacobson visited a doctor and reported severe wrist pain, morning stiffness, difficulty concentrating, and a general feeling of being overwhelmed.  R. 169.  On June 29, 2006, she visited rheumatologist Dr. John Hague.  Apparently based on Ms. Jacobson's reports, Dr. Hague concluded that "she is quite dysfunctional at the present time."  R. 181.

On July 20, 2006, Ms. Jacobson visited Dr. Stephen Pfeifer who diagnosed her with fibromyalgia.  She rated her pain as a ten out of ten on 70 percent of days.  R. 154.  On an undated 2006 form, Dr. Pfeifer reported that Ms. Jacobson

---

[1]Reliance disputes that it is the plan administrator, but it cites no evidence to support this proposition.  The evidence establishes that Reliance insured the policy and made all determinations about Ms. Jacobson's eligibility.  All of Ms. Jacobson's interactions were with Reliance.  When the court refers to the "administrator," it is referring to Reliance.

could stand, sit, walk, and drive for one to three hours each in an eight hour day. He wrote that she could not repetitively push, pull, or do fine manipulation with her hands.  He also wrote that she could bend, squat, climb, reach, kneel, crawl, use her feet, and drive occasionally (0-33% of the time) and could lift a maximum of ten pounds.  He wrote that her ability to perform simple and repetitive tasks and complex and varied tasks was extremely limited.  R. 122.  He did not fill out a portion of the form requesting "objective findings."  R. 121.  He indicated that Ms. Jacobson could recover fully from her conditions and that her conditions could improve in less than two months, but he wrote "pending" when asked when she could return to work.  R. 122.  On January 15, 2007, Dr. Pfeifer wrote to Reliant that Ms. Jacobson "is permanently disabled from her fibromyalgia.  She has made legitimate attempts using multiple medications and physical therapy to improve her symptom complex, but she still has disabling pain in her neck, shoulders, wrists, and arms.  Because of this, she is unable to focus and concentrate adequately to do any job that requires cognitive function."  R. 201.

On February 5, 2007, Ms. Jacobson was evaluated at the Fibromyalgia and Fatigue Center in Ohio.  The examining doctor concluded that she met the Center for Disease Control's definition for chronic fatigue syndrome and the American College of Rheumatology's definition for fibromyalgia.  He noted that she exhibited eight of twenty-one tender points.  He also diagnosed her with hypothyroidism, insomnia, and restless leg syndrome.  R. 232.  On May 21, 2007, Ms. Jacobson had an MRI that indicated arthritis in her left wrist.  R. 284-85.  On July 6, 2007,

Dr. Howard Dash performed surgery on Ms. Jacobson to remove the pisiform bone from her left wrist.  R. 289.

II.     *Reliance's Consideration of Ms. Jacobson's Case*

On August 28, 2006, Ms. Jacobson applied to Reliance for long-term disability benefits.  She claimed that she was unable to work because of "extreme fatigue, constant pain, concentration and focus problems."  She claimed that she became unable to work full-time on February 6, 2006.  R. 104.  On October 30, 2006, Reliance informed Ms. Jacobson that it needed more of her medical records to determine her eligibility for benefits.  Reliance told Ms. Jacobson that it would attempt to obtain the records but that it was her responsibility to offer proof of disability.  R. 142-43.  Reliance made a similar request on September 29, 2006.  R. 131.  On December 15, 2006, Reliance notified Ms. Jacobson that it had not received all of the information that it needed to decide her claim.  R. 184.  On December 4, 2006 and February 14, 2007, Reliance nurse Marianne Lubrecht reviewed Ms. Jacobson's file and was unable to determine how her condition became worse when she alleged that her disability began. She also found no impairment in sedentary function.  R. 61.

Reliance denied Ms. Jacobson's claim on February 16, 2007.  Reliance wrote that it was denying the claim because Ms. Jacobson's medical records did not explain how her condition worsened to cause her to allege disability and did not

support any impairment in sedentary functioning.  R. 203-05.  Ms. Jacobson appealed this denial on July 31, 2007.  R. 220.  She submitted additional records to Reliance on December 13, 2007.  R. 225.  On January 29, 2008, Reliance acknowledged receipt of the additional records, informed Ms. Jacobson that it would seek an independent physician's opinion on her disability, and informed her that it would require a forty-five day extension to determine her eligibility.  R. 303.

Dr. Howard Choi reviewed Ms. Jacobson's file for Reliance.  He is not employed by Reliance.  Dr. Choi is a diplomate of the American Board of Physical Medicine & Rehabilitation and certified by the American Board of Independent Medical Examiners, but he has no special training concerning fibromyalgia.  R. 317-20.  Dr. Choi stated that he reviewed the following documents: "correspondence from Reliance Standard, correspondence from the claimant, office note by Dr. Pfeifer, lab values from Quest Diagnostic, notes by Dr. Gabovitch, notes by Dr. Youkilis, [and] multiple diagnostic studies."  R. 314.  Reliance stated that "the entire file was sent to Dr. Choi for review," Dkt. No. 35 at 5, but the court cannot determine from the record exactly which documents were sent to Dr. Choi.  Dr. Choi concluded from the evidence available to him that Ms. Jacobson had no impairment.  R. 314-16.  Dr. Choi focused on the lack of objective medical evidence of disability.  On February 19, 2008, Reliance informed Ms. Jacobson that her appeal was denied.  R. 307-13.

III.    *The Policy*

The policy provides that Reliance "has the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." R. 15. It provides that Reliance will pay monthly disability benefits if the insured is totally disabled, under the regular care of a physician, has completed an "elimination period," and has submitted "satisfactory proof" of total disability to Reliance. R. 19. The policy defines total disability as the following if it results from an injury or sickness:

> (1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation;
>> (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her regular occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;
>> (b) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability; and
> (2) after a Monthly Benefit has been paid for 24 months, an Insured cannot perform the material duties of any occupation. Any occupation is one that the Insured's education, training or experience will reasonably allow. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a Full-time basis.

R. 10-11. The elimination period is a "period of consecutive days of Total Disability . . . for which no benefit is payable." R. 9. Ms. Jacobson's elimination period was ninety days. R. 7. The policy provides for limited benefits for participants who suffer from "self-reported conditions," defined as "conditions which . . . cannot be verified using generally accepted standard medical

procedures and practices.   Examples of such conditions include, but are not limited to, . . . fatigue, loss of energy, or pain." R. 25.  Benefits for self-reported conditions are capped at twenty-four months.  *Id.*

Ms. Jacobson's employer told Reliance that she was a senior administrative assistant and that her major responsibilities were secretarial.   R. 102.   The employer said that her job required occasional standing and walking and frequent sitting.  *Id.*  The job required the ability to do sedentary work.

### Standard of Review

The parties dispute which standard of review should apply to Reliance's denial of benefits.  Under ERISA, "a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  If the plan gives the administrator discretionary authority, then review of the administrator's decisions is conducted using an abuse of discretion, or in the Seventh Circuit's words, arbitrary and capricious, standard.   See *id.* at 111; *Hess v. Reg-Ellen Mach. Tool Corp. Employee Stock Ownership Plan*, 502 F.3d 725, 727 (7th Cir. 2007).

The policy grants Reliance discretionary authority, R. 15, so the arbitrary and capricious standard normally would apply.  Ms. Jacobson argues that the court should apply the *de novo* standard because Reliance denied her claim for benefits nearly six months after her application, contrary to ERISA regulations.

ERISA regulations set time limits for administrators to grant or deny claims and appeals.  Ms. Jacobson cites the regulation setting the time limits for administrative appeals, 29 C.F.R. § 2560.503-1(i)(1)(i), but she faults Reliance for its delay in deciding her initial application.  The time limit to respond to the initial application is established by 29 C.F.R. § 2560.503-1(f)(3).  It provides that administrators have forty-five days to respond to a claim for disability benefits. The administrator may take two thirty day extensions if it notifies the claimant. If the administrator seeks an extension to obtain more information from the claimant, the time limits are tolled while the claimant responds to the request for new information.  29 C.F.R. § 2560.503-1(f)(4).

Ms. Jacobson applied for benefits on August 28, 2006.  Reliance received the application on September 6, 2006.  R. 36.  On October 30, 2006, after the forty-five day deadline had already expired, Reliance wrote to Ms. Jacobson to inform her that it needed additional records.  R. 142-43.  The letter did not say that Reliance was extending the deadline to decide her claim.  In fact, the letter said that Reliance would deny Ms. Jacobson's claim if it did not receive additional documents within fifteen days.  On November 29, 2006, Reliance informed Ms.

Jacobson that her file was complete.  R. 168.  It denied her claim on February 16, 2007.

Reliance did not comply with the regulation.  The October 30, 2006 letter informing Ms. Jacobson that Reliance needed more medical records did not seek an extension, and Reliance sent the letter more than forty-five days after it received her claim on September 6, 2006.  Even if the October 30, 2006 letter had sought a valid thirty day extension, Reliance did not make its decision within thirty days of November 29, 2006, the date that Ms. Jacobson's file was complete.

Several courts, though not the Seventh Circuit, have held that *de novo* review applies when an administrator does not respond to a claim or appeal within the ERISA regulation's time limits.  See, *e.g.*, *Nichols v. Prudential Ins. Co. of America*, 406 F.3d 98, 109 (2d Cir. 2005); *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 632 (10th Cir. 2003); *Pisek v. Kindred Healthcare, Inc. Disability Ins. Plan*, 2007 WL 2068326, at *9 (S.D. Ind. July 17, 2007).  These cases relied on an old provision in the ERISA regulations that provided that claims were "deemed denied" when an administrator did not respond within the time limits.

The regulation was amended in 2000, and it now reads that when an administrator does not comply with the required claims procedures, the claimant is "deemed to have exhausted the administrative remedies available under the plan and shall be entitled to" bring a suit in federal court.   29 C.F.R.

§ 2560.503-1(*l*).  The cases cited by Ms. Jacobson relied on the old regulation. The new regulation applies to her claim.  The new regulation eliminated the "deemed denied" language and instead gave claimants an option to file suit in federal court when administrators miss deadlines.  Unlike the "deemed denied" regulation, the new language suggests that claimants have a limited-time *opportunity* to file suit in federal court.

Ms. Jacobson did not take advantage of this opportunity and has waived her chance to take advantage of a more deferential standard of review.  In many of the cases that hold that an administrator's untimely denial of benefits is reviewed *de novo*, the administrator never issued a final decision.  *E.g.*, *Nichols*, 406 F.3d at 102 (administrator never answered appeal); *Gilbertson*, 328 F.3d at 628-30 (same). In this case, Reliance denied Ms. Jacobson's claim late, and it also denied her appeal.  Ms. Jacobson did not file suit before those decisions were made.  The court addresses Reliance's final decision.

Because the *de novo* standard does not apply, the court "must review a denial of benefits deferentially, asking only whether the plan's decision was arbitrary or capricious."  *Hess*, 502 F.3d at 727.  Under the arbitrary and capricious standard, an administrative decision will be overturned only if it is unreasonable.  *Id*.  The court will uphold the decision when "(1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or

(3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem." *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 321-22 (7th Cir. 2007), quoting *Sisto v. Ameritech Sickness & Accident Disability Benefit Plan*, 429 F.3d 698, 700 (7th Cir. 2005).

### *Plaintiff's Motion for Summary Judgment*

Ms. Jacobson argues that Reliance's decision to deny her appeal was arbitrary and capricious for several reasons.  Based on the last argument she made, the court agrees that the denial was arbitrary and capricious.  Because the court finds Reliance's decision to be arbitrary and capricious, it denies the Plan's motion for summary judgment, which argues that the denial was not arbitrary and capricious.  The court remands the case to Reliance for further findings and explanation on Ms. Jacobson's claim.

I.     *Dr. Choi's Expertise*

Ms. Jacobson first argues that Reliance violated ERISA regulations when it assigned Dr. Choi to review her file because he is not a fibromyalgia expert. ERISA regulations require that "in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment . . . the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment."  29 C.F.R. § 2560.503-1(h)(3)(iii); see 29 C.F.R. § 2560.503-1(h)(4) (applying subsection (h)(3)(iii) to disability plans).

Dr. Choi was qualified to review Ms. Jacobson's records for Reliance.  He is a diplomate in physical medicine and rehabilitation.  R. 317.  The specialty of physical medicine and rehabilitation involves "the diagnosis and management of impairments of the musculoskeletal . . . and other organ systems, and the long-term management of patients with disabling conditions."  American Board of Physical Medicine and Rehabilitation, Definition of Physical Medicine and Rehabilitation,  https://www.abpmr.org/consumers/pmr_definition.html  (last visited Aug. 27, 2009).  He is also a clinical assistant professor of rehabilitation medicine.  R. 317.  Ms. Jacobson alleged "extreme fatigue, constant pain, concentration and focus problems."  R. 104.  Dr. Choi's training in musculoskeletal impairments and rehabilitation made him an appropriate doctor to evaluate Ms. Jacobson's records for Reliance.  See *Mote v. Aetna Life Ins. Co.*,

502 F.3d 601, 608 (7th Cir. 2007) (affirming summary judgment for Plan when administrator referred file of claimant who alleged fibromyalgia and other impairments to consultants who were not rheumatologists).[2]

II.    *Records Considered by Dr. Choi*

Ms. Jacobson next argues that Reliance did not provide all of her records to Dr. Choi.  In deciding Ms. Jacobson's appeal, Reliance had a duty to consider all of the evidence in her record.  *Semien v. Life Ins. Co. of North America*, 436 F.3d 805, 812 (7th Cir. 2006).  Reliance could not have discharged its duty to "consult with a health care professional" in deciding Ms. Jacobson's appeal if it did not provide that professional, Dr. Choi in this case, with the entire record.  Dr. Choi stated that he reviewed the following documents: "correspondence from Reliance Standard, correspondence from the claimant, office note by Dr. Pfeifer, lab values from Quest Diagnostic, notes by Dr. Gabovitch, notes by Dr. Youkilis, [and] multiple diagnostic studies."  R. 314.  However, Ms. Jacobson argues that Dr. Choi did not consider the records from the Fibromyalgia and Fatigue Center and the records from Dr. Hague.  The court has no way of knowing if Dr. Choi considered these records because he did not refer to them directly.  However, in

_____

[2]*Morgan v. UNUM Life Ins. Co. of America*, 346 F.3d 1173 (8th Cir. 2003), cited by Ms. Jacobson, is distinguishable.  In that case the Eighth Circuit criticized the use of a doctor with no expertise in fibromyalgia to evaluate a claimant's alleged fibromyalgia.  The court did not explain what expertise the doctor had.  In Ms. Jacobson's case, Dr. Choi has expertise in musculoskeletal impairments, which provides him with the necessary background to evaluate claims of fibromyalgia.

light of the other errors requiring remand discussed below, the court need not decide whether the uncertainty about records available to Dr. Choi requires remand.

III.    *Ms. Jacobson's Occupation*

Ms. Jacobson's third argument is that Reliance should not have relied on Dr. Choi's opinion because he did not know what her actual occupation was.  Dr. Choi's report provides no indication that he knew she was an administrative assistant for Sallie Mae.  However, Dr. Choi did not need to know Ms. Jacobson's occupation.  He only determined whether she had an impairment.  He did not determine whether she met the policy's definition of disability.  Reliance, which knew Ms. Jacobson's occupation, used Dr. Choi's conclusion on impairment to make its determination that she could perform her occupation and did not meet the policy's definition of disability.  R. 310-12.

IV.    *Objective Evidence of Impairments*

Ms. Jacobson saved her best argument for last.  She argues that the denial of benefits was arbitrary and capricious because Dr. Choi and Reliance incorrectly insisted on objective evidence of impairments.  She points out that the policy provides for limited benefits for participants who suffer from "self-reported conditions," defined as "conditions which . . . cannot be verified using generally accepted standard medical procedures and practices.  Examples of such

conditions include, but are not limited to, . . . fatigue, loss of energy, or pain." R.
25.  She claims that Reliance never told her that it needed additional objective
evidence of impairments and that Reliance and Dr. Choi ignored evidence in the
record suggesting that she was impaired.  The court agrees and finds that
Reliance's and Dr. Choi's insistence on additional objective evidence of impairment
was arbitrary and capricious.

The Seventh Circuit has recognized that the symptoms of fibromyalgia are
difficult to document objectively:

> Its cause or causes are unknown, there is no cure, and, of greatest
> importance to disability law, its symptoms are entirely subjective.  There are
> no laboratory tests for the presence or severity of fibromyalgia.   The
> principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness,
> and – the only symptom that discriminates between it and other diseases
> of a rheumatic character – multiple tender spots, more precisely 18 fixed
> locations on the body (and the rule of thumb is that the patient must have
> at least 11 of them to be diagnosed as having fibromyalgia) that when
> pressed firmly cause the patient to flinch.

Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996) (remanding denial of disability
benefits to Social Security Administration).  The tender point test injects some
objectivity into the diagnosis of fibromyalgia, but the amount of pain caused by
the disease can be measured only subjectively.   Because of this inherent
subjectivity, an administrator or a reviewing doctor cannot deny impairment or
disability just because the claimant's pain cannot be quantified objectively.
Hawkins v. First Union Corp. Long-Term Disability Plan, 326 F.3d 914, 919 (7th Cir.
2003) (remanding denial of benefits).  However, an administrator can insist on

objective evidence of the limitation caused by fibromyalgia.  *Williams v. Aetna Life Ins. Co.*, 509 F.3d 317, 322-23 (7th Cir. 2007) (affirming denial of benefits).

Remand is required for two reasons.  First, Reliance's and Dr. Choi's approach here was inconsistent with the policy itself.  While an administrator can insist on objective evidence of impairments caused by conditions like fibromyalgia, this policy specifically provides for benefits for self-reported conditions for twenty-four months.  Self-reported conditions include "conditions which . . . cannot be verified using generally accepted standard medical procedures and practices."  In its first denial, Reliance did not inform Ms. Jacobson that she needed to submit additional objective evidence of impairment from fibromyalgia as it was required to do.  R. 203-05; 29 C.F.R. § 2560.503-1(g)(1)(iii).  Despite never informing Ms. Jacobson that she needed to submit additional objective evidence of impairment, Reliance based its denial of her appeal on Dr. Choi's conclusion that no objective evidence supported impairment.  Yet the policy implies that claimants do not need to submit objective evidence of impairments for self-reported conditions like fibromyalgia.  Of course, Reliance is not required to provide benefits to everyone who claims to suffer from fibromyalgia.  However, ERISA regulations and the Plan required Reliance to give Ms. Jacobson notice that objective evidence of impairment was necessary.  The Plan itself also requires Reliance to recognize a genuine possibility that a person can be totally disabled by self-reported conditions, those that cannot be verified using generally accepted standard medical procedures and practices.

Second, Dr. Choi's discussion of fibromyalgia and the need for objective evidence was lacking.  The closest he came to discussing fibromyalgia was to refer to the lack of objective evidence of an "anatomical or functional impairment."  R. 315-16.   Dr. Choi did not discuss Ms. Jacobson's multiple diagnoses of fibromyalgia, *e.g.*, R. 180, 192, 201, 232, or an examination showing that she had eleven tender points, R. 180.  Without referring to fibromyalgia, Dr. Choi pointed out a supposed lack of objective evidence of impairments in Ms. Jacobson's daily functioning.   But the only thorough evaluation of Ms. Jacobson's ability to function in the record shows severe limitations in many fields, including the ability to perform repetitive tasks and complex tasks.  R. 122.[3]

Reliance based its denial of Ms. Jacobson's appeal in large part on Dr. Choi's inadequate report.   R. 307-13.   Reliance never explained why Ms. Jacobson's fibromyalgia did not render her disabled, aside from mentioning Dr. Choi's conclusion that the record did not provide objective evidence of restrictions in Ms. Jacobson's activities.   "ERISA requires that specific reasons for denial be communicated to the claimant and that the claimant be afforded an opportunity for 'full and fair review' by the administrator."   *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 775 (7th Cir. 2003), quoting *Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 688 (7th Cir. 1992).   Even under the deferential arbitrary-and-capricious standard of review, the court cannot uphold a denial of

---

[3]The evaluation form, completed by Dr. Pfeifer, suggested that Ms. Jacobson's restrictions were temporary, but Dr. Pfeifer later said that Ms. Jacobson "is permanently disabled from her fibromyalgia."  R. 201.

benefits "when there is an absence of reasoning in the record to support it." *Hackett*, 315 F.3d at 774-75.  By failing to inform Ms. Jacobson that she needed to present additional objective evidence of impairment and then finding with little explanation that fibromyalgia did not cause an impairment, Reliance fell far short of this requirement and deprived her of a full and fair review.

The Seventh Circuit recently remanded in a similar case.  In *Love v. National City Corp. Welfare Benefits Plan*, the administrator cancelled the plaintiff's disability benefits after awarding benefits for nearly four years.  — F.3d —, 2009 WL 2178667 (7th Cir. July 23, 2009).  The administrator terminated the benefits after receiving the reports of two doctors (one on its initial determination and one on administrative appeal) who evaluated the plaintiff's impairments under a more limited definition of disability that kicked in after the plaintiff had received benefits for two years.  The doctors reviewed the plaintiff's file, which included the opinions of several doctors that the plaintiff had a limited functional capacity because of her multiple sclerosis.  They concluded that the plaintiff did not have sufficient functional limitations to render her disabled, but they did not explain why they rejected the contradictory opinions in the record.  The district court affirmed the administrator's denial of benefits, but the Seventh Circuit reversed. It applied the arbitrary and capricious standard of review and faulted the administrator for failing to "provide a reasonable explanation for its determination" and failing to "address any reliable, contrary evidence presented by the claimant." *Love*, — F.3d at —, 2009 WL 2178667, at *4.

Reliance made the same mistake here.  The record contained the opinions of several doctors that Ms. Jacobson suffered from fibromyalgia and was unable to work.  It also contained a functional limitation report filled out by Dr. Pfeifer indicating that Ms. Jacobson suffered from severe functional limitations.  Reliance denied Ms. Jacobson's initial application, but, like the administrator in *Love*, it did not inform her that she needed to submit additional objective evidence of impairment.  It then submitted the record to Dr. Choi, who concluded that it did not contain objective evidence of impairment without discussing Dr. Pfeifer's report or explaining why he discounted the opinion of Ms. Jacobson's doctors that she could not work.  Reliance based its denial of Ms. Jacobson's appeal on Dr. Choi's opinion.  Reliance did not give Ms. Jacobson an opportunity to submit the objective evidence it claimed was lacking, and it relied on this purported lack of objective evidence to deny her application without explaining why it was ignoring contrary evidence in the record.  Reliance's denial of benefits was arbitrary and capricious.

V.      *Remedy*

Having found Reliance's decision arbitrary and capricious, remand to Reliance for additional findings and explanation on Ms. Jacobson's application for long-term disability benefits is the appropriate remedy.  "When a court or agency fails to make adequate findings or fails to provide an adequate reasoning, the proper remedy in an ERISA case is to remand for further findings or

explanations." *Love*, — F.3d at —, 2009 WL 2178667, at *5, quoting *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 477 (7th Cir. 1998).   On remand, Reliance should give Ms. Jacobson an opportunity to submit additional objective evidence of impairment, and it should conduct a more thorough review of her medical records to determine if she meets the definition of disabled.   If it were to conclude again that she has not presented objective evidence of disability, it would need to explain why records showing her limited functional capacity are not sufficient, including discussion of the fact that the policy clearly contemplates the possibility of total disability based on self-reported conditions.

*Conclusion*

Ms. Jacobson's motion for summary judgment is granted.  Dkt. No. 20.  The Plan's motion for summary judgment is denied.  Dkt. No. 21.  The case is remanded to Reliance for additional findings and explanation on Ms. Jacobson's claim for long-term disability benefits.  Ms. Jacobson may file a petition for attorney fees and costs under 29 U.S.C. § 1132(g)(1)  no later than September 22, 2009.


So ordered.

Date: September 1, 2009

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana


Copies to:

Melissa A. Davidson
CHARLES D. HANKEY LAW OFFICE
charleshankey@hankeylawoffice.com

Daniel John McMahon
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
mcmahond@wemed.com

Edna Sybil Bailey
WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP
edna.bailey@wilsonelser.com